IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ACE RENT-A-CAR, INC., )
)
      Plaintiff, )
)
vs. ) No. 06 C 4134
)
EMPIRE FIRE & MARINE )
INSURANCE COMPANY, NATIONAL )
CASUALTY COMPANY and )
FLEXICORPS, INC., )
)
      Defendants. )

### MEMORANDUM OPINION AND ORDER

Plaintiff Ace Rent-A-Car, Inc. ("Ace") filed suit seeking a declaration that defendants Empire Fire and Marine Insurance Company ("Empire") and National Casualty Company ("National") owe a duty to defend and indemnify it against a class action suit brought in state court by Flexicorps, Inc.[1] Ace, Empire and National all move for summary judgment. For the following reasons we deny Ace's motion and grant the motions of Empire and National.

### BACKGROUND

On May 27, 2003, Flexicorps, Inc., an Illinois corporation, filed suit in the Circuit Court of Cook County, Illinois, individually and on behalf of a class of those similarly situated against Ace and Options Travel ("Options"), an Illinois travel agency. Flexicorps, Inc. v. Ace Rent-A-Car, Inc., No. 03 CH 9063)(hereinafter referred to as the "underlying litigation" or the "underlying complaint"). The complaint alleges that Ace and Options sent unsolicited facsimile advertisements in violation of the Telephone Consumer Protection Act ("TCPA"),

---

[1] Ace also named Flexicorps as a defendant in the instant case, but does not seek any specific relief against it.

47 U.S.C. § 227 (2000). It also alleges that in sending these faxes Ace and Options committed conversion, and violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2. The faxes consisted of two pages, one being a letter from Options Travel, and the other a coupon for free parking at one of Ace's lots located at O'Hare International Airport.

In June 2003, Ace timely notified Empire of the underlying litigation, pursuant to several Commercial General Liability ("CGL") policies issued to Ace by Empire between June 1997 and June 2003. On July 30, 2003, Empire accepted Ace's defense in the underlying litigation under a reservation of rights. On May 8, 2006, Empire filed a declaratory judgment action in the Northern District of Illinois, claiming it no longer has a duty to defend Ace in the underlying litigation. <u>Empire Fire and Marine Ins. Co. v. Ace Rent-A-Car, Inc.</u>, No. 06 CV 2558 (Norgle, J., presiding). That case is currently pending.

On July 26, 2006, Ace filed suit in the Circuit Court of Cook County against defendants Empire Fire and Marine Insurance Company ("Empire") and Scottsdale Insurance Company, alleging that they owed Ace a duty to defend and indemnify it in the underlying litigation. Empire removed the case to this court, pursuant to 28 U.S.C. § 1441, based on diversity jurisdiction. 28 U.S.C. § 1332. Ace moved to remand, alleging that removal was improper because Scottsdale did not join in the removal and there were unsettled questions of state law. We denied Ace's motion (dkt. 36), and later dismissed Scottsdale as a defendant (dkt. 52).

On April 26, 2007, Ace tendered its defense and indemnity in the underlying litigation to National, pursuant to a "Garage" insurance policy National had issued to Ace. On August 9, 2007, National, via letter, declined to defend and indemnify Ace in the underlying litigation. Ace then filed an amended complaint, adding National as a defendant and alleging that it also owed Ace a duty to defend and indemnify. Ace, National and Empire now cross-move for

summary judgment.

Ace asserts that both defendants owe it a duty to defend and indemnify under two different provisions in their respective policies – an "advertising injury" provision and a "property damage" provision. The relevant language in both Empire's and National's policies is similar. Both policies define "advertising injury," *inter alia*, as "Oral or written publication of material that violates a person's right of privacy." Both policies define property damage as physical injury to, or loss of use of property. Empire's policy permits coverage for property damage that was the result of an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Empire policy does not define the term "accident." The National policy covers property damage as a result of an "accident," defined as "includ[ing] continuous or repeated exposure to the same conditions." Neither policy defines the terms "privacy," "publication," or "material." Both policies exclude from coverage "'property damage' expected or intended from the standpoint of the insured." National's policy also excludes coverage when the insured fails to give "prompt notice" of the accident or loss for which it seeks coverage.

## ANALYSIS

Summary judgment is proper where the pleadings and evidence present no genuine issues of fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (U.S. 1986). We evaluate admissible evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Where, as here, both sides move for summary judgment, both are required to show that no genuine issues of fact exist, taking the facts in the light most favorable to the party opposing each motion. Lac Courte Oreilles Band of Lake Superior Chippewa Indians

v. Voigt, 700 F.2d 341, 349 (7th Cir. 1983). Construction of an insurance contract is a matter of law, making it suitable for summary judgment resolution. Zimmerman v. Illinois Farmers Ins. Co., 317 Ill. App. 3d 360, 365 (Ill. App. Ct. 2000); Tate v. Secura Ins., 587 N.E.2d 665, 668 (Ind. 1992).

Notice Provision

National argues that Ace's four-year delay in providing notice of the underlying litigation to National violates the reasonable notice provision of the policy and relieves National from any duty to defend and indemnify Ace. The parties agree that there is no conflict between Indiana and Illinois on the subject of reasonable notice, and therefore we save our conflict-of-law analysis for the next section. In re Air Crash Disaster near Chicago, 644 F.2d 594, 605 (7th Cir. 1981). Nor do the parties dispute that Ace tendered its defense to National almost four years after the filing of the underlying litigation. They disagree as to whether the lateness of the notice is "unreasonable" as a matter of law. Indiana courts have held that whether notice is unreasonable is a two-part test. Liberty Mutual Ins. Co. v. OSI Industries Inc., 831 N.E.2d 192, 202 (Ind. Ct. App. 2005). First, the court determines whether notice was given in a reasonable time. Id. Next, the court looks to whether prejudice ensued from the unreasonable delay. OSI Industries Inc., 831 N.E. 2d at 202. Where such a delay exists, a rebuttable presumption of prejudice arises. Askren Hub States Pest Control Servs., Inc. v. Zurich Ins. Co., 721 N.E.2d 270, 279 (Ind. Ct. App. 1999). To survive summary judgment the insured must present sufficient evidence to allow a reasonable jury to conclude that prejudice did not exist in the particular situation. Id.

Illinois courts have a slightly different method for determining unreasonable delay. Illinois courts examine the circumstances of each case, and the existence of prejudice is simply

one factor to consider when determining whether notice was unreasonable. Country Mut. Ins. Co. v. Livorsi Marine, Inc., 222 Ill. 2d 303, 313 (Ill. 2006). Also considered is 1) the language of the policy's notice requirement, 2) the extent of the insured's sophistication in the world of commerce and insurance, 3) awareness on the part of the insured that an occurrence has taken place, and 4) the diligence with which the insured ascertains whether coverage is available. Ankus v. Government Employees Ins. Co., 674 N.E.2d 865, 870 (Ill. App. Ct. 1996). The Illinois Supreme Court has commented that "when analyzing whether notice was reasonable, some courts have stated that prejudice is not a factor unless the delay in notice is relatively brief or the insured has a good excuse." Livorsi Marine, 222 Ill. 2d at 312-13 citing Twin City Fire Insurance Co. v. Old World Trading Co., 266 Ill. App. 3d 1, 8-9, 639 N.E.2d 584, 203 Ill. Dec. 264 (1993) and Fletcher v. Palos Community Consolidated School District No. 118, 164 Ill. App. 3d 921, 928, 518 N.E.2d 363, 115 Ill. Dec. 838 (1987).

While Indiana and Illinois have somewhat differing standards to determine when notice is unreasonable, we find the outcome to be the same in both cases. Under Indiana case law, a rebuttable presumption of prejudice has arisen simply from the fact that Ace waited almost four years to notify National of the underlying litigation. *See* Erie Ins. Exch. v. Stephenson, 674 N.E.2d 607, 611 (Ind. Ct. App. 1996)(four-year delay in notification unreasonable as a matter of law where policy required notice "as soon as possible"). Ace argues that National has not been prejudiced because for the majority of those four years Empire was defending Ace in the underlying suit, albeit under a reservation of rights. That fact may certainly set this case apart from the numerous cases where an insured is controlling defense of the litigation during the delay. However, we do not agree with Ace that simply because Empire was controlling the litigation during the intervening years means that National's interests were

being protected. Had National been timely notified of the litigation it could have hired its own counsel, engaged in preliminary settlement discussions (the time for which has now long passed), or hasten the pace of the litigation. *See* OSI Indus., Inc., 831 N.E.2d at 202 (even though the insured won the underlying suit, the failure to notify the insurer resulted in prejudice as a matter of law since the insured was unable to control defense, offer settlement or negotiate attorney fees). Since Ace offers no evidence that Empire's defense was in accord with National's interest, it has not generated a genuine issue of material fact under Indiana law. *See* Askren Hub, 721 N.E.2d at 280.

Ace's delay would be similarly unreasonable under Illinois law. Ace does not appear to argue that the National policy's "prompt notice" language could include a four-year delay. Furthermore, Ace is arguably a sophisticated party, and it was aware that an occurrence had taken place since it timely tendered notice to Empire. National Ins. Co. of N.Y. v. City of Chicago, 759 N.E.2d 144, 149 (Ill. App. Ct. 2001). Finally, Ace offers no explanation as to why it waited this long to tender notice to National. *Id.* Even if Ace could demonstrate that no prejudice occurred, that fact alone would not outweigh the remaining factors in National's favor. Illinois courts "will not permit a lack of prejudice to compensate for inexcusable delay." Sonoco Bldgs., Inc., Div. of Sonoco Product Co. v. American Home Assurance Co., 877 F.2d 1350, 1356 (7th Cir. Wis. 1989) *citing* Fletcher v. Palos Community Consol. School Dist., 164 Ill. App. 3d 921, 926, 518 N.E.2d 363, 367, 115 Ill. Dec. 838 (1987). Therefore, under both Indiana and Illinois law, Ace's four-year delay in tendering defense to National is unreasonable as a matter of law, and National is entitled to summary judgment.

Choice of Law

We then turn to whether Empire had a duty to defend and indemnify Ace. Empire's

policy does not contain a choice-of-law provision and the parties disagree as to whether Illinois or Indiana law applies to this action. A federal court sitting in diversity must apply the choice-of-law rules of the jurisdiction in which it sits, which in this case is Illinois. Rexford Rand Corp. v. Ancel, 58 F.3d 1215, 1219 (7th Cir. 1995). However, we must first examine the relevant laws "to determine that a conflict actually exists, under any choice-of-law theory, before application of the theory." In re Air Crash Disaster near Chicago, 644 F.2d at 605; Townsend v. Sears, Roebuck & Co., 227 Ill. 2d 147, 155 (Ill. 2007).

Empire argues that a conflict of law does exist regarding whether the definition of "advertising injury" encompasses TCPA violations. It points to two cases: the Illinois Supreme Court case of Valley Forge Insurance Co. v. Swiderski Electronics, Inc., 223 Ill. 2d 352, 860 N.E.2d 307 (Ill. 2006), and a federal district court case from the Southern District of Indiana, Erie Insurance Exchange v. Watts, 2006 U.S. Dist. LEXIS 35828 (S.D. Ind. May 30, 2006)("Watts I"). The Watts case was decided before Valley Forge and relied, in part, on a Seventh Circuit opinion construing a similar policy provision under Illinois law. American States Ins. Co. v. Capital Associates of Jackson County, Inc., 392 F.3d 939 (7th Cir. 2004). Watts I held that under Indiana law the language, "oral or written publication of material that violates a person's right of privacy," did not include TCPA violations based on "fax blasts" – conduct similar to what Flexicorps alleges in the underlying complaint. The Illinois Supreme Court, in Valley Forge, rejected the Seventh Circuit opinion in American States, and held that under Illinois law similar language did include "fax blast" TCPA violations. The Watts court revisited the issue after the Valley Forge decision, but did not alter its holding. Erie Insurance Exchange v. Watts, 2006 U.S. Dist. LEXIS 91762 (S.D. Ind. Dec. 19, 2006)("Watts II").

Ace argues that no real conflict exists because the rules of construction are substantially

Nuclear Corp., 571 F.2d 1144, 1148 (10th Cir. 1978)(resident district court judge's interpretation carries extraordinary force where there are no state decisions directly on point); *but see* Sarnoff v. American Home Prods. Corp., 798 F.2d 1075, 1080 (7th Cir. 1986)(rejecting district court's construction of state law). We find that the district court's decision in Watts is entitled to just as much weight in this court as it would be in the Court of Appeals. Therefore, we find that a conflict exists between the laws of Illinois and Indiana, and we must engage in a choice-of-law analysis.

To determine whether Illinois or Indiana law applies, under Illinois choice-of-law rules we consider "the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract." Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co., 166 Ill. 2d 520, 527, 655 N.E.2d 842 (Ill. 1995). "While all these factors must be considered in the choice of law analysis, the location of the insured risk is given special emphasis." Society of Mount Carmel v. National Ben Franklin Ins. Co. of Ill., 268 Ill. App. 3d 655, 643 N.E.2d 1280, 1287 (Ill. App. Ct. 1994). Ace argues that where an insured conducts nationwide business, the location of the insured risk is where the liability actually arises. Evangelical Lutheran Church in America v. Atlantic Mutual Ins. Co., 973 F. Supp. 820, 824 (N.D. Ill. 1997); Mount Carmel, 643 N.E.2d at 1287; Diamond State Ins. Co. v. Chester-Jensen Co. Inc., 243 Ill. App. 3d 471; 611 N.E. 2d 1083, 1094 (Ill. App. Ct. 1993); American Builders & Contractors Supply Co. v. The Home Ins. Co., 1997 U.S. Dist. LEXIS 796 (N.D. Ill. Jan. 28, 1997). However, the principal state court cases upon which Ace relies, Mount Carmel and Diamond State, do not stand for this proposition.

similar in both Indiana and Illinois and the <u>Watts</u> decisions are no longer good law in light of <u>Valley Forge</u>. Even if they are good law, Ace asserts that we should disregard them as a statement of Indiana law because they are not state court decisions. Contrary to Ace's position, a court is permitted to look at federal court precedent where there are no state court decisions on point. <u>Bagcraft Corp. of America v. Fed. Ins. Co.</u>, 848 F. Supp 115 (N.D. Ill. 1994)(court may consider all sources that help to reasonably predict outcome, including relevant state and federal precedents); 19 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4507 (2d ed. 1996). Furthermore, federal district judges sitting in the state in question, and who have practiced in its courts, are generally considered better able to resolve complex questions of state law than those judges with no such familiarity with the laws of the particular state. 19 FEDERAL PRACTICE AND PROCEDURE § 4507 (citing cases). As a general rule, courts of appeal, and even the Supreme Court, have given considerable weight to such opinions. *See e.g.* <u>Butner v. United States</u>, 440 U.S. 48, 58 (U.S. 1979)(courts dealing regularly with questions of state law are in a better position to determine how local courts would dispose of comparable issues); <u>Lamb v. Briggs Mfg., Div. of Celotex Corp.</u>, 700 F.2d 1092, 1094 (7th Cir. 1983)(where no authoritative resolution of legal issue had been rendered by state courts, district court's construction of state law entitled to great weight); <u>Black v. Fidelity & Guaranty Ins. Underwriters, Inc.</u>, 582 F.2d 984, 987 (5th Cir. 1978)(when state law affords no guidance, interpretation by the district judge well-versed in local law is entitled to great deference); <u>Missouri P. R. Co. v. Star City Gravel Co.</u>, 592 F.2d 455, 459 n.3 (8th Cir. 1979)(district court decision predicting state law in absence of state court rulings "entitled to great weight"); <u>In re Complaint of McLinn</u>, 739 F.2d 1395, 1407 (9th Cir. 1984)(collecting cases); <u>Rasmussen Drilling, Inc. v. Kerr-McGee</u>

In <u>Mount Carmel</u>, there existed a physical "insured risk," namely, a high school permanently located in California, the state that the court found to possess the "most significant contacts." 643 N.E.2d at 1287. Similarly, in <u>Diamond State</u>, there was a physical insured risk, in the form of commercial equipment, permanently located in Illinois. 611 N.E.2d at 1094. As in <u>Mount Carmel</u>, the <u>Diamond State</u> court held that the location of the risk in Illinois was a major factor in determining that Illinois had the most significant contacts. *Id.* This corresponds with the general proposition, drawn from the Restatement, that "the location of the insured risk...enjoys greatest significance when an immovable object is involved, such as when the risk insured against is damage by fire to a particular building." Restatement (Second) of Conflict of Laws § 193 cmt. b (1971). Both courts then held that their choice-of-law determinations were further supported by the fact that liability arose in the state where the insured risk was located. However, neither court considered the location of the litigation over the location of the physical insured risk. <u>Mount Carmel</u>, 268 Ill. App. 3d at 665; <u>Diamond State</u>, 243 Ill. App. 3d at 487. To the extent that the federal district courts in <u>American Builders</u> and <u>Evangenical Lutheran</u> rely on <u>Mount Carmel</u> and <u>Diamond State</u> for the proposition that when the insured risk is national in scope the location of the insured risk is where liability actually arises, we find they are reaching further than the holdings of those cases support. *See* 1997 U.S. Dist. LEXIS 796, *6-7; 973 F. Supp. at 824. At least one court in this district, and one Illinois appellate court, agree. <u>Zurich Ins. Co. v. Sunclipse, Inc.</u>, 85 F. Supp. 2d 842, 849 (N.D. Ill. 2000)("Although the location of the underlying action is sometimes considered as an additional relevant factor, Illinois courts have not equated the location of the underlying action with the location of the subject matter or insured risk"); <u>Westchester Fire Ins. Co. v. G. Heileman Brewing Co., Inc.</u>, 321 Ill. App. 3d 622, 747 N.E.2d 955, 963 (Ill. App.

Ct. 2001)(location of risk has little significance when policies cover risk nationwide).

There are additional distinctions between <u>Mount Carmel</u> and <u>Diamond State</u> on the one hand, and this case on the other. In those cases, the insured risk was a single act (wrongful termination of a teacher of the school, or a breach of contract in the design and installation of a single air-conditioning system). <u>Mount Carmel</u>, 268 Ill. App. 3d at 658; <u>Diamond State</u>, 243 Ill. App. 3d at 474. Here, the insured risk is Ace's alleged commercial advertising, which, unlike the insured risks, is not limited to one instance in one location. According to the face of the underlying complaint, Ace and Option allegedly sent "thousands" of fax blasts nationwide, resulting in class action litigation. For these reasons we do not find <u>Mount Carmel</u> or <u>Diamond State</u> particularly instructive here. Thus, while we will consider the fact that Flexicorps has filed suit against Ace in Illinois, we will not grant this factor more weight than any other we must consider. <u>Schlosser v. St. Paul Fire & Marine Ins. Co.</u>, 2004 U.S. Dist. LEXIS 645 (N.D. Ill. Jan. 20, 2004); *see* Restatement (Second) of Conflicts of Laws § 193 cmt. b. ("Situations where...the location of the risk has less significance, include...(2) where the policy covers a group of risks that are scattered throughout two or more states").[2]

Looking to the other factors, it appears that Indiana has the most significant contacts. Ace argues that its principal place of business is in Illinois, and cites testimony from Richard Radzis, Ace's president, that the principal office is in Des Plaines, Illinois, because that is

---

[2] Ace points us to Comment F of the Restatement, which notes that in multiple risk policy situations the best route is treat such cases as if each insured risk involved an individual policy. *Id.* cmt. f. However, in that example the insured risks were permanent fixtures in the states in question, unlike the situation here where the alleged insured risk is simply the underlying litigation. *See* <u>Lee v. Interstate Fire & Casualty Co.</u>, 86 F.3d 101, 104 ("That is in the end what <u>Lapham-Hickey</u> stands for: in that case a single policy covered risks in may states, so applying the law of the delivery state produced a consistent interpretation"); *see also* <u>Employers Ins. of Wausau v. Ehlco Liquidating Trust</u>, 309 Ill. App. 3d 730, 723 N.E.2d 687, 695 (Ill. App. Ct. 1999)(location of risk accorded little weight when insured risks located in more than one state); <u>Schlosser</u>, 2004 U.S. Dist. LEXIS 645 (same); <u>Emerson Elec. Co. v. Aetna Cas. & Sur. Co.</u>, 319 Ill. App. 3d 218, 232 (Ill. App. Ct. 2001)(same).

where his office is located (Ace exh. 2). Radzis later filed an affidavit stating that all corporate decisions are made – and day-to-day business conducted – in his Des Plaines office (Ace exh. 3). The Seventh Circuit, and Illinois courts generally, consider the principal place of business to be the location of the corporation's "nerve center" – where business is transacted, decisions are made, and where the company's executive offices are located. Westchester, 747 N.E.2d at 962. Generally, this is where the company is headquartered, though there are cases where the nominal headquarters is not really the directing intelligence of the corporation. Wisconsin Knife Works v. National Metal Crafters, 781 F.2d 1280, 1282 (7th Cir. 1986). According to Radzis' statements, this factor would favor Illinois. However, we find his statements cannot trump compelling evidence that Ace's principal place of business is in fact in Indiana. Ace's Articles of Incorporation, its amended by-laws, and recent corporate governance filings for both Indiana and Illinois, all cite Indiana as Ace's principal place of business (Empire exhs. A, B, C, D). When Ace had three directors, two resided in Indiana (Empire SOF ¶ 25). Now that it has only two directors, one of them, Vice President Charlie Mullen, resides in Indiana (Empire SOF ¶ 26). Ace's CFO also resides there (Empire SOF ¶ 37). Between 1997 and 2003 all board of directors' meetings for Ace have been held in Indiana, and all shareholder meetings have been conducted there as well (Empire SOF ¶ 27, 29). The address at the top of all of Ace's business checks (used to pay the insurance premium) is an Indiana address (Empire exh. F). While Ace's Illinois operations account for more than 50% of its revenue, Empire insures twelve locations in Indiana and only five in Illinois (Empire SOF ¶ 32, exh. G). All communication that occurred between Empire and Ace, save communication regarding the underlying litigation, was between Ace's Indianapolis office and Empire. All Empire policies were presented to, and executed by, Indianapolis personnel. Further, it is in the Indianapolis

office where Ace's Loss Control department resides, and where invoices are generated and payments are made. Finally, Ace's premium checks to Empire were all (save one) drawn on an Indiana bank. Looking at all of the evidence, we find Ace's principal place of business to be in Indiana.

The place of delivery of the contract and the place of the last act giving rise to an enforceable contract favor Indiana. As stated above, almost all premium payments were issued from Ace's Indianapolis office on an Indiana bank account. Emerson, 319 Ill. App. 3d at 233 citing 4 APPLEMAN ON INSURANCE 2d § 21.6, at 278 (1998)(typically, last act required to make policy effective takes place in "the state where the policy is delivered and the premiums are paid"). Where the case was filed favors Illinois, as does where the defense would be tendered.

Regarding the place of performance, Ace argues that the significant Illinois contacts made it entirely foreseeable to Empire at the time of contracting that the place of performance would be Illinois.[3] "Where there is no express agreement as to the place of performance, it may be determined according to the intent of the parties, namely, the intended place of the insurer's payment of claims under the policy." Emerson, 319 Ill. App. 3d at 234 citing 2 COUCH ON INSURANCE 2d § 16:11, at 497 (rev. 1984). Ace argues that the claims would be paid in Illinois, the location of Flexicorps and of the underlying litigation. But according to the underlying complaint, the claims would be paid nationwide, to a national class. Where the parties' intent is in doubt, "we look to the state where the insured is located." Emerson, 319 Ill. App. 3d at 234 citing 2 COUCH ON INSURANCE 2d § 16:11, at 497 (rev. 1984) (where parties'

---

[3] Ace also notes the fact that Empire is licensed to do business in Illinois, that 19 of its 63 officers reside in Illinois, and that it is wholly-owned by Zurich American Insurance Company, whose principal place of business is in Illinois. Empire admits these statements, but argues that the last one is irrelevant since Zurich did not underwrite any of Ace's policies, a point which Ace concedes.

intent is in doubt, applicable principle is that the creditor seeks out the debtor; hence, insurer "makes payment [i.e., performs] in the state where the insured is located"). Here, as in Emerson, the parties' intent is in doubt and we must look to the state where the insured is located, which we have already determined is Indiana. *Id.* Therefore, the place of performance favors Indiana. Considering all of these factors together, we determine that Indiana law should apply to this action.

## Advertising Injury

Given that Indiana law applies, and given that the language in Empire's policy mirrors that of the policy at issue in Watts,[4] we need not engage in a lengthy discussion of the merits of Ace's advertising injury claim. In sum, Empire has no duty to defend Ace because TCPA violations implicate a different privacy interest than that covered by the advertising injury provisions of the policy. Watts I, 2006 U.S. Dist. LEXIS 35828. The analysis in Watts relied heavily on the Seventh Circuit's opinion in American States, 392 F.3d 939, a case that was interpreting Illinois law, and was later disregarded by the Illinois Supreme Court in Valley Forge. 223 Ill. 2d at 369-370. However, the logical analysis laid out in American States may still hold true in Indiana, as another district court has found. *See* Ace Mortgage Funding, Inc. v. The Travelers Indemnity Co. of America, 2008 U.S. Dist. LEXIS 18696 (S.D. Ind. March 10, 2008)(agreeing with the Watts court's prediction of the Indiana Supreme Court on this issue). We find the Watts and Ace Mortgage courts to be in a better position to predict what the Indiana Supreme Court would do in this instance. We therefore defer to their judgment.

---

[4] The language in both policies, as well as was the case in Watts, defines an advertising injury, *inter alia*, as "an injury arising out of the '[o]ral or written publication of material that violates a person's right to privacy."

Property Damage Clause

We turn then to whether Empire owes Ace a duty to defend under the "property damage" provision of its policy. The policy provides coverage for property damage that was the result of an "occurrence," defined as an "accident." The Indiana Supreme Court has held that implicit in the definition of "accident" is a lack of intent. Auto-Owners Ins. Co. v. Harvey, 842 N.E.2d 1279, 1285 (Ind. 2006). The Seventh Circuit in Red Ball Leasing v. Hartford Accident & Indemnity Co., 915 F.2d 306 (7th Cir. 1990)(applying Indiana law), held that intentional acts are not "accidents," as that term is used in the standard insurance policy definition of "occurrence."

In order to determine whether Ace's alleged conduct falls within the policy's definition of "occurrence," we must turn to the underlying complaint itself. The Indiana Supreme Court, in Transamerica Ins. Services v. Kopko, 570 N.E. 2d 1283, 1285 (Ind. 1991), held "the duty to defend is determined solely by the nature of the complaint." Several Indiana courts have questioned the validity of this statement of law, or have simply ignored it and have continued to hold that the duty to defend is determined not only by the underlying complaint, but by a reasonable investigation on the part of the insurer. See Trisler v. Indiana Ins. Co., 55 N.E.2d 1021 (Ind. Ct. App. 1991); Monroe Guaranty Ins. Co. v. Monroe, 677 N.E.2d 620, 624 (Ind. Ct. App. 1997)(collecting cases); General Accident Ins. Co. of America v. Gastineau, 990 F. Supp. 631, 633-34 (S.D. Ind. 1998)(collecting cases). However, the Seventh Circuit has held that it remains bound to Kopko until the Indiana Supreme Court holds otherwise, which it has not done. Fidelity & Guar. Ins. Underwriters v. Everett I. Brown Co., L.P., 25 F.3d 484, 490 (7th Cir. 1994); see Freidline v. Shelby Ins. Co., 774 N.E.2d 37 (Ind. 2002).

Yet, the Seventh Circuit has also attempted to reconcile the various holding of Indiana

courts, stating that "while Indiana's courts may use differing language to describe that standard, we believe there is essentially only one standard – that the allegations of the complaint, including the facts alleged, give rise to a duty to defend whenever, if proved true, coverage would attach." Federal Ins. Co. v. Stroh Brewing Co., 127 F.3d 563, 566 (7th Cir. 1997). Here, the underlying complaint alleges that both Ace and Options sent the offending faxes, and that their conduct was "willful and intentional" (Flexicorps' cplt. at ¶6). If this allegation is proven true, coverage would not attach since willful and intentional conduct is not "accidental," as defined by Indiana law, and thus does not fall within the policy's definitions.[5] Accordingly, Empire does not have a duty to defend Ace under either policy provision.

Since under Indiana law an insurer's duty to defend is broader than its duty to indemnify, our holding necessarily means neither National nor Empire owe Ace a duty to indemnify and summary judgment is appropriate on that issue as well. Stroh Brewing, 127 F.3d at 566 citing Seymour Mfg. Co., Inc. v. Commercial Union Ins. Co., 665 N.E.2d 891, 892 (Ind. 1996).

## CONCLUSION

For the foregoing reasons, Ace's motion for summary judgment is denied and the motions of Empire and Nationals motions for summary judgment are granted.

July 17, 2008.

JAMES B. MORAN
Senior Judge, U. S. District Court

---

[5] We note that our finding would not change if we analyzed this case under various Illinois appellate courts' holdings that the duty to defend requires insurers to engage in reasonable investigations. Ace does not argue that the faxes were sent without the permission of the recipients, but argues that it did not give permission to Options to send the faxes in the first place. However, the only evidence Ace offers to support this argument is the testimony of Radzis, in which he states that he does not recall having a conversation with Options as to how the coupons would be distributed (Ace exh. 2 at p. 76). His inability to recall is not a denial, and is not sufficient to raise a genuine issue of material fact for purposes of this motion. Brown v. Chi. Transit Auth. Ret. Plan, 2005 U.S. Dist. LEXIS 43328 (N.D. Ill. July 22, 2005)(inability to recall letters is not sufficient to create genuine issue of fact as to authenticity), citing Rocket v. Marten Transport Ltd., 2001 U.S. Dist. LEXIS 15749, *21 (N.D. Ill. Sept. 27, 2001)(plaintiff's inability to recall instances of misconduct did not create a genuine issue of material fact sufficient to defeat motion for summary judgment).